We will move now to Appeal 22-2003, Andrew Stacy v. United States, and we'll begin with Mr. Nazarian. Morning, Your Honors. Morning. May it please the court, my name is Ken Nazarian. I represent the plaintiff appellant in this matter, Andrew Stacy. We are here today to discuss an incorrect application of an administrative offset on the behalf of Mr. Stacy. As Your Honors, I'm sure are aware, Mr. Stacy was incarcerated for a period of time after he had entered into a plea agreement. As part of that plea agreement, he was required to pay restitution. In this particular case, during the pendency of that incarceration, he required a hip replacement. He did not receive that hip replacement while incarcerated, and it resulted in a medical malpractice claim that we brought under the FTCA. After a full series of litigation on that matter, the United States and Mr. Stacy entered into a settlement agreement for $75,000. However, during that settlement negotiation, it was indicated to us that the Department of Treasury would be invoking the administrative offset in this case. We believe that allowance by the Department of Treasury was inappropriate, and we believe that it was either a misapplication of the law by the district court in this matter, or an unconstitutional application of those statutes. For the following reasons, we believe that the statute U.S.C. 3716, which prescribes the requirements for an administrative offset, are inconsistent with the mandate of 31 U.S.C. 3728. We believe that the district court made an inappropriate determination that those applied in this case. We also believe that the statute cited by counsel for the United States, 18 U.S.C. 3664N, is limited, as well as the 31 U.S.C. 3728 is limited to judgments as opposed to settlements. Where do you see that in M1A1, sorry, M1A2, quote, by all other available and reasonable means, end quote? Your Honor, I would argue that that is not an allowance to circumvent a settlement for a personal injury matter against an inmate who has been wronged by the United States. You seem to be advocating a rule that applies only to personal injury claims that arise in prison. Is that right? Correct, Your Honor. That's a pretty narrow rule to tease out of the statutory language. It is, Your Honor. However, I would argue that there are limitations that are prescribed in those statutes. For instance, in 18 U.S.C. 3664N, there is a limit to only during incarcerations that those would... Right, but not in M. Yes, Your Honor. It allows for them to prescribe by any means necessary. However, the Congress was able to include settlements or any type of windfall... But N is not inheritances, lottery wins, royalties. Correct, Your Honor. Okay. And it's conceivable that Congress had to have that specificity, an N for incarcerated people, because there were all these other provisions that allowed for offset otherwise. I would agree with that, Your Honor. However, that is exactly one of my points. With administrative offset, there are rules that go to the requirements in order to invoke that procedure. In Section 3716, it prescribes that there are four specific requirements to invoke an administrative offset, including notice to the party, an ability to review the claim, an ability to dispute the claim, and whether or not there is a written agreement that exists. And that all has to be in place in order for the government to invoke an administrative offset under that statute. Now, here we have a written plea agreement. We believe that the written plea agreement is a written agreement to repay that debt, which would obviate the ability of the government to invoke 3716, and therefore the administrative offset. The written commitment to pay prevents the offset? Yes, Your Honor. How's that? I believe that as part of 3716, it allows that if there is a written agreement in place that allows for the defendant, or in this case, the debtor, to repay the debt to the United States, if there's something already in place that prescribes how that debt is supposed to be written, that the government should not be allowed to institute an administrative offset per that statute. But he's already behind. It was correct? Correct, Your Honor. We believe that the plea agreement here is paramount since there is that written agreement prescribed by the trial court and prescribed by the... Did I miss this in your brief? I don't believe so, Your Honor. I think that was in Section 2 of the reply brief on pages 3 to 6, and then... I apologize, Your Honor. I thought this was a debate about whether this is a debt owed to the government. Well, yes, Your Honor. That was part of the argument that we made on whether or not this was a debt owed to the government. We argued that this was a debt that was owed specifically to the victims and that the United States... To whom does he make his payments every month? To the United States, Your that says these are debts owed to the government? Yes, Your Honor. I would agree that that is... That was a point brought up by the United States. I believe that despite the fact that they are... That Wittbach indicates that there is a debt owed to the government, I do not believe that it should be considered as... I understand your belief. Do you have any authority to the contrary, given the Very good. Thank you, Mr. Nazarian. We'll now move Ms. Reedy to you for argument from the government. May it please the court. Counsel, if this court were to adopt appellant's argument that Stacy's compliance with the payment plan shields his other non-exempt assets from enforcement, then the United States, on behalf of victims of crimes, would have fewer rights than a credit card judgment holder. That is not the statutory scheme that Congress put in place here. The statutory scheme gives the to collect a restitution debt for good reason, with the main focus being to make victims whole. Unless... Ms. Reedy, can I ask you about jurisdiction in the district court? Of course, Your Honor. You have argued the district court did not have jurisdiction here. We've got pretty broad statutory language, and I don't see any contrary authority from you. Yes, Your Honor. The United States position is that jurisdiction here. You are correct. This is not, based on our research, this is not an area that the circuit courts have weighed in on yet. The reason that we say that there's not jurisdiction here is based on the plain language of the statute. As, of course, Your Honor knows, this is a sovereign immunity argument, which means it needs to be strictly construed, and any waiver of sovereign immunity needs to be on the part of the United States against the plaintiff. This is not a provision that allows for reciprocal jurisdiction. This is allowing the United States to bring, within the FTCA action, and let me make a distinction, we did not bring a set-off claim in the FTCA action. We never brought that as a claim in the action. Now, yes, the case, the FTCA case, was settled, resulting in a 75,000 settlement. Okay. I think I understand. You're splitting hairs pretty finely here. Let's suppose there is a serious dispute about the legitimacy of the set-off, and the government goes ahead and imposes it anyway on a settlement here. What forum is available, if any, for judicial review of that set-off? Yes, Your Honor. The Federal Court of Claims, absolutely. But in addition, and it's not entirely clear, and if Your Honor is interested in supplemental jurisdiction. So you'd have to go to the Court of Claims rather than to either sentencing court or the FTCA court? Yes, Your Honor. And actually... Why would you want to bring a third court into the case? Well, Your Honor, I did want to actually clarify. It may be that jurisdiction is available before the criminal case, before the sentencing court. And certainly that would be, by far, more appropriate than the court here. On reply brief, appellant brings up the argument that we did not comply with 31 U.S.C. 3716. I just want to note, and this seems like a sidebar, but the point is that when the criminal restitution judgment was entered, it would be part of the United States normal procedure under the top program to comply with the requirements under 3716. None of that factual information is on this record today. What Stacey is trying to do here is dispute his obligation under a criminal restitution judgment, and that should really be before either the Federal Court of Claims or possibly before the sentencing judge. I don't know that he's actually disputing that original debt, is he? He's just saying, I get to keep this or my lawyers at least get to keep a share of it. Yes, Your Honor, I should say he is disputing the enforcement mechanism that the United States has for administrative offset. And one thing I will say, Your Honor, just in looking at this, the Seventh Circuit, an example of a case that would allow for jurisdiction under 3146 subsection C is Southside Bank and Trust Co. v. United States. That's a Seventh Circuit case, and it's an old case. It's 1955, but it's just a good example of when we think jurisdiction would be appropriate. And that was a case where a bank brought an action against the United States after the United States had a contract with a business to get seven trailers. The business said, you're going to pay me a certain amount of money, and what happened is that when the United States, after the trailers had been provided, when the United States went to pay that business, we said, actually, you owe a bunch of taxes. And so our payment to you for the contract, for your services, is that amount. The bank brought an action against the United States saying, hey, I have these assigned rights. That was how I secured that debt. That was a case where the United States under 1346C brought a claim in that action. That is what is allowed under 1346 subsection C, not for Stacy to bring a wholly unrelated challenge to how the United States enforces his criminal restitution judgment against the United States here. If your honors have no further questions on jurisdiction, I'd like to turn to the merits. I will be making two key points, although, of course, if your honors have any particular questions, I can address. Oh, and one other point. There is several district courts that have weighed in on this issue, your honor, to the jurisdictional point. As you know, of course, Johnson well-cited in our briefs, and then Stacy, the district court decision here. But in addition, U.S. versus Raytown-Lawnmower Co., which is 763 F. Supp. 411-1991, that is a case that, although it is not very detailed reasoning, it certainly supports the United States position here. But your honor is correct. I'm not referring to any particular topic. I'm happy to do so. The first being 3664 absolutely allows the use of the top program here. And the second point being to the core of Stacy's argument that the payment plan somehow shields the use of enforcement to his other non-exempt assets. To that first point, 3664, as your honors noted, subsection N specifically uses an or conjunctive after talking about two statutes, and then uses the quote by all other available and reasonable means. That certainly includes the use of the top program. In addition, subsection N, although it obviously does not apply because Stacy was not incarcerated at the time, a difference between subsection N as in Nancy and subsection M is the fact that that is an affirmative obligation on the defendant. And that's going to be an important distinction in both these areas. N provides an affirmative obligation. M allows us to use various methods for the United States to enforce. And I'm going to turn to my second point because that's a similar distinction. What the payment plan does is requires, as an affirmative obligation, an in personam remedy, which requires defendant to meet at least a minimum standard, and as this court has found in Faradayden, that that is a floor, not a ceiling. That is just one avenue that we require the defendant to affirmatively start making victims whole. But in addition, the United States has many powers under its enforcement mechanisms. Separate and apart of defendant's affirmative obligation to meet his payment plan, we are then allowed, just like a credit card judgment holder would be, to enforce the judgment using all in rem remedies up to the amount of the judgment. And in this case, the district court made very clear that his criminal restitution was due immediately. The TOPS program is just one avenue where the United States is able to make the victim whole. In addition to that distinction, there is a, within the statute specifically, there is both in rem remedies and in personam remedies, and the United States can use both. And you'll find the in rem remedies, which is what the TOPS program, excuse me, the TOPS program would be under, under 3613, as well as 3613A would be the in personam remedy. And what I mean by that is, your honors, if Stacey doesn't comply with his payment plan, then the United States, and this is a sword specifically of criminal judgments, criminal judgments only, where under 3613A there can be serious consequences, such as being resentenced, being found in contempt of court. And that's because that's an in personam remedy. The administrative offset program is an in rem remedy. And we should have, as the United States, just as many rights as a credit card judgment holder. The last thing, your honors, I'll leave you with is just that, although in this case it is a, the victims of the crime, because this was a bank fraud criminal restitution judgment, are institutional victims. But any ruling that the court reaches in this arena would affect all restitution, whether it is an institutional or an individual victim, including sex trafficking victims and citizens that have lost money through fraud through no fault of their own. For that reason, if the court has no further questions, we would ask that the court either remand with instructions to dismiss for lack of subject matter jurisdiction, or if this court finds jurisdiction, to affirm on the merits. Thank you, Ms. Rady. Mr. Nazarian, we'll go back to you now for rebuttal argument. Thank you, your honors. Your honors, to the United States' point regarding jurisdiction, I do believe that the title is particularly telling of that statute. For 1346, it is titled United States as a Defendant. We believe that that 1346C confers jurisdiction on the district court to determine any set-offs whether the United States is a defendant and they have a claim against a plaintiff. In this case, we believe that that is exactly on point here, based on statutory construction. With relating to the administrative offset as a whole, though defense counsel has come up here and said, well, this implies that the United States should have equal grounds as a creditor. As Judge Hamilton had earlier specified, we were focusing on a very narrow carve-out to these statutes, specifically relating to a personal injury perpetrated by the United States government while incarcerated. The problem that we have and the argument that we've made as it relates to the Eighth Amendment is that by allowing an individual to have this restitution and this administrative offset, they can never truly be made whole from any personal injuries that they've sustained while incarcerated. That would be authorizing. So you think this would be unconstitutional then? Yes, your honor. Okay, so do you think a damages remedy is required under the Constitution for all constitutional violations? Not necessarily, your honor. But I believe in this particular case where you have a personal injury for an injury that is sustained while incarcerated, something that is— You don't even have a constitutional violation, right? You have negligence. Yes, your honor. That is correct. And even in the case of proven deliberate indifference towards serious health needs of an inmate, the defense of qualified immunity could be available, correct? Correct, your honor. But there is carve-outs specifically for the FTCA. The FTCA has very little to do with the Constitution. I understand the policy argument that you're making, which you think is a bad idea. Yes, your honor. Stretching it to say it would be unconstitutional to deny relief here is way beyond anything that I would see as justified. And obviously that is, to your point, your honor, we believe that it is an extreme circumstance. We believe that the slippery slope here is more telling. Though in this particular case, Andrew Stacey had a hip replacement. It is, of course, relating to medical negligence. But it gives way to a far greater worry and far greater fear of an individual who is deliberately attacked, injured, while incarcerated. And the Supreme Court has been dismantling the damages remedies under the Eighth Amendment in Bivens over the last couple of decades without apparent constitutional qualms. Yes, your honor. That is correct. So how do we get to a conclusion that we need to agree with you to stay within the Constitution? I think that specifically it relates to the mandate that is part of 31 U.S.C. 3728 that requires that the Department of Justice withhold any funds for these individuals. I believe that is the main issue. All of the other statutes that have been cited by the defense are permissive. It is an allowance by the United States. So if the government had discretion to exercise this set off, you think that would address this problem? I think that it could potentially address this problem, though I believe that Congress would have to enter some sort of further requirement or limitation on the U.S. government for instances where you have an individual who is injured in incarceration or under the custody of the United States. Thank you. No problem. I see that my time has elapsed. Your honor, may I conclude briefly? You may. Your honor, for all of the reasons that we've indicated, we believe that Andrew Stacey's administrative set off should be overturned and the district court's ruling comport with both constitutionality and the actual language of the statutes as we've cited in our argument. Thank you, Mr. Nazarian. Thank you, Ms. Rady. The case will be taken under advisement.